

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
Attorney General

DIVISION OF STATE COUNSEL
**Civil Recoveries Bureau**
**Bankruptcy Litigation Unit**

June 11, 2024

Honorable Robert E. Littlefield, Jr.
United States Bankruptcy Court
James T. Foley U.S. Courthouse
445 Broadway, Suite 330
Albany, New York 12207

      Re:    In re Good Samaritan Lutheran Church Health Care Center, Inc.
             Case No. 19-12215
             In re Kenwood Manor, Inc.
             Case No. 19-12216

Judge Littlefield,

At the last conference, NYS Department of Health ("DOH") was asked whether regulations allow DOH review to included Mr. Klein's other applications and existing facilities. DOH was also asked to address impact of a dismissal of the bankruptcy case.

By letter dated May 13, 2024 the Hinman firm asked that DOH meet with the U.S. Trustee regarding the pending applications, and assumedly these issues.

Our office provided response to parties in interest by letter dated May 23, 2024. The letter addressed the application and review process and closure process. We also identified parties in interest who may be in a position to further address these issues. DOH declined to meet with parties in light of the information provided and its continuing review. Copies of the letter and supporting documents are attached.

DOH met with the applicant (Solomon Klein), their consultant (Frank Cicero), and counsel (Michael Gurman) on Friday, June 7, 2024. They were informed that the DOH intends to recommend disapproval of the Nursing Home application and disapprove the Adult Care Facility application. They were instructed to let Mark Furnish in the Office of Aging and Long Term Care know whether they intend to move forward with the disapproval recommendation to the PHHPC or withdraw the Nursing Home application.

It is my understanding that Mr. Furnish has not yet heard from the applicant (Solomon Klein), consultant (Frank Cicero), or counsel (Michael Gurman).

Thank you.

Respectfully,

Martin A. Mooney, Esq.
Assistant Attorney General
Bankruptcy Litigation Unit
Civil Recoveries Bureau
The Capitol
Albany, New York 12224-0341
Martin.Mooney@ag.ny.gov

## STATE OF NEW YORK
## OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
Attorney General

DIVISION OF STATE COUNSEL
**Civil Recoveries Bureau**
**Bankruptcy Litigation Unit**

May 23, 2024

David B. Morgen
Hinman Straub P.C.
121 State Street
Albany, New York 12207

> Re: In re Good Samaritan Lutheran Church Health Care Center, Inc.
> Case No. 19-12215
> In re Kenwood Manor, Inc.
> Case No. 19-12216

David,

This communication serves as response to your letter dated May 10, 2024.

First, and as I have stated to the court, the New York State Department of Health has exclusive authority to review and submit nursing home applications to the PHHPC for its consideration. The New York State Department of Health has exclusive authority to review and consider adult care facility applications.

As I am sure you are aware, Title 10 of the NYCRR, Part 600 outlines the application and review process.

Most relevant are Sections 600.1 and 600.2 governing submission of applications and requirements for approval. Section 600.1 states that an application shall contain, among other items, information and data related to 1) character, experience, and competency of applicants and 2) financial resources and sources of future revenue of the facility to be operated. Approval requires a demonstration that 1) applicants are of such character, experience, and competence to give reasonable assurance of their ability to conduct affairs in the public interest, 2) adequate finances are available to applicants to establish and conduct operation of the facility, and 3) a substantially consistent high level of care has been rendered in each facility associated with applicant. The determination of whether a high level of care has been rendered requires evaluation of the gravity of any violation, the manner in which the applicant/operator exercised supervisory responsibility over the facility operation, and the remedial action, if any, taken after the violation was discovered. A substantially consistent high level of care shall not be found where violations were found, which either threatened to directly affect patient/resident health, safety, or welfare, or resulted in direct, significant harm to the health, safety, or welfare of patients/residents, and were recurrent or were not promptly corrected.

As noted to the Court, Mr. Klein owns and operates thirty-nine (39) facilities throughout New York and Florida. Thirty-two of the facilities have been owned and operated for less than four years. A summary of Mr. Klein's performance ratings are set forth in the table below, a matter of public record.

| CMS Star Rating Criteria - 10 NYCRR 600.2(b)(5)(iv) | | | | | |
|---|---|---|---|---|---|
| | | Duration of Ownership* | | | |
| | | < 48 Months | | 48 months or more | |
| Proposed Owner | Total Nursing Homes | Number of Nursing Homes | Percent of Nursing Homes With a Below Average Rating | Number of Nursing Homes | Percent of Nursing Homes With a Below Average Rating |
| Solomon Klein | 39 | 32 | 37.5% | 7 | 14.3% |

*Duration of Ownership as of 06/20/2024                                                Data date: 4/2024

Performance ratings impact the level of review for any new applications.

The Department's review is intended to provide the applicant the opportunity to address concerns and the best opportunity to succeed. It continues to review the application as a priority in these efforts subject to the requirements set forth in Part 600 of the regulations.

The New York State Department of Health understands that parties are anxious for a completion of the review process. It must also balance its own obligation to satisfy governing regulations through investigation of character and competence, financial stability and quality of care provided to the state's elderly residents.

If the rate of review and progress is not satisfactory, Mr. Klein's consultant, Frank Cicero, is welcome to notify DOH in writing that the application in its present form should be submitted to the council for consideration. Parties should contact Mr. Cicero to ask if it is his client's decision to submit the application in its present form without further review or any further opportunity to address concerns of the DOH.

To the question of dismissal of the bankruptcy, DOH discussed impact upon the nursing home and adult care facility with the Plan Administrator and The Lutheran Care Network, Inc. one year ago. These parties fully understand that a plan for closing must be submitted by The Lutheran Care Network, Inc. prior to closure. See Birnbaum v. State, 73 NY2d 638 (Court of Appeals 1989). In furtherance we attach Facility Closure Plan Guidelines. Further inquiries regarding the closure process are more appropriately addressed to Mr. Mitnick and The Lutheran Care Network or its counsel. We are willing to review their comments to determine whether we can add any information.

Based upon the information provided in this letter, and identification of those parties who can better address outstanding issues, DOH will decline meeting with the parties in interest, including the Office of the U.S. Trustee.

Thank you.

Respectfully,

*[signature]*

Martin A. Mooney, Esq.
Assistant Attorney General
Bankruptcy Litigation Unit
Civil Recoveries Bureau
The Capitol
Albany, New York 12224-0341
Martin.Mooney@ag.ny.gov

# Facility Closure Plan Guidelines

## General Information

This information has been prepared for all providers who are seeking approval to close a facility or discontinue services or programs that provide medical care and/or services to individuals in a community-based, residential or acute care (hospice, adult care facilities, nursing homes or hospitals) setting.

Verbal notification must be provided to the Department of Health's (DOH) Regional Program Manager or Program Director as soon as any provider contemplates closure/service discontinuance (closure). [Written notification of the possibility of closure must be provided to the regional office no later than 48 hours following the verbal notification.] Information on a potential closure may not be disclosed to the public, patients/residents or staff prior to notifying the DOH, submission of a closure plan to the DOH, and approval of such plan by the DOH.

The New York State Commissioner of Health must approve all closure plans in writing prior to issuing any public announcements related to a closure. Your closure plan should not be considered approved until you receive a written notification from the Commissioner or the Director of the Center for Health Care Quality and Surveillance. Any verbal comment from the Regional Office should not be considered as an approval.

Pursuant to Department regulations, the following requirements regarding closures must be met:

- 120 days prior notice of the intent to close must be provided to the DOH;
- prior written approval of the closure and the operator's plan must be obtained from the Director of the Center for Health Care Quality and Surveillance.
- no announcements or actions related to the proposed closure should be taken prior to receiving approval.
- each patient, resident, next of kin, physician and sponsor must be notified immediately upon receipt of the Department of Health's approval in accordance with the Plan approved by the Director of the Center for Health Care Quality and Surveillance;
- the operator's closure plan must include, among other things, provision for the maintenance, storage and safekeeping of patient/resident records;
- the provider's operating certificate must be promptly surrendered to DOH upon discontinuance of operation with a list of residents and the location to which facility.

Providers may utilize their own format for the written closure plan, but the information submitted to the DOH must clearly and succinctly include all the attached information, in the order listed. Please note that a full range of appropriate services for all patients/residents must be provided throughout the entire closure process.

**You must have written approval from the department of health prior to implementation of a closure plan.**

In the event the resident wishes to move, or the family wishes to move the resident prior to the closure plan being approved, you must contact the Regional Office and discuss the transfer with them before moving the resident.

Questions about this procedure may be addressed to your regional Program Director.

The following information must be included (in order) in the facility closure plan submitted for approval by the NYS Department of Health (DOH):

*Please include the date, name, address and telephone number of the facility/operator on all pages of the closure plan.

1. An admission/discharge roster showing the last 6 months at the time of submission of the plan.
2. Evidence of verbal and written notification to the Regional Program Director or Manager at the time closure was contemplated.
3. Target closure date, facility capacity, current census
4. Name, title, telephone # and email address of the individual designated as the operator's contact person throughout the closure process.
5. Name, title, telephone # and email address of the individual responsible for coordinating closure, if different from the individual identified in #3. If more than one individual has been assigned to separate closure duties (e.g., resident assessment, discharge coordination, directing care, media contacts, equipment disposal, record disposition etc.) all names and contact information must be included.
6. A narrative description of the proposed plan to notify residents, patients, next of kin, sponsors, staff and physicians of the closure plan. This should include written notification and meetings. Include dates and times of meetings, if available at the time of submission of the proposed plan, so that DOH staff may attend if desired. A copy of the sample letter to the resident, resident's representative, family and staff should be provided with the closure plan. Letter should include a contact name and phone number in the event questions should arise. It should be indicated who will be signing the letter.
7. A roster of all residents with a general profile of the resident population.
8. All Required reports e.g., Financial Reports and Census Reports have been submitted to the Department. All required HCS information should be up to date.
9. A description of the plan to manage media contacts initially and throughout the process. Media releases should be coordinated with the DOH **prior to** release.
10. A description of a plan to involve the facility's Ombudsman and other agency staff and providers serving the residents, if applicable.
11. The plan to discontinue admissions, including the date new admissions will stop. Include a plan to notify all referring institutions.
12. A summary of the facility's current financial condition and description of the assets available to the operator to maintain appropriate services during the closure period.
13. The process to identify appropriate placement for current patients/residents. The process should include assessing the needs of the patients/residents, making determinations regarding bed availability at other area facilities, providing information about other facilities to patients/residents/families, insuring that the wishes of current patients/residents/families are respected when placement decisions are made; and insuring that concerns such as geographic location, public transportation, type of facility/provider, medical care etc. are addressed in identifying future placement options for residents/patients.
14. A referral package should be prepared for each resident which includes current assessments and medical evaluations, care plans, medication and treatment records, histories, discharge summaries, identifying information etc. For residents receiving OMH services, OMH must assure that the appropriate information is included in the package. The plan must insure that records are transferred to the new facility in a secure manner with the residents/patients who are being relocated. Resident records shall be retained for three years and facility records shall be retained for seven years. Include in the closure plans how and where these records will be maintained.
15. The plan to ensure that resident/patient belongings will be secured and transferred.
16. The plan to determine the appropriate method of transport to be utilized for patients/residents.
17. Include the process that insures the residents' prorated rent and the plan for allocation and security of resident funds. The facility must complete a full accounting of resident funds, if any, on a resident-specific basis prior to closure. The plan must include a signed attestation by the operator that the accounting is accurate. The plan should describe how resident funds are being protected. The plan must also include a signed attestation that all resident funds are secure. The accounting should be sent to the DOH regional office upon request. Resident funds should be sent to the receiving facilities when residents are transferred.
18. A plan to dispose of drugs and biologicals, chemicals, radioactive materials.
19. The plan for appropriate record retention. Resident records should be retained for three years post discharge and facility records for seven years post closure. Plan should include security measures, the name, address and phone number of the location where the records will be stored.

20. A roster of resident final placements is required. Submission of the ACF Annual Statistical Form for the current year will also be required at this time. Submit with Operating Certificate. The original copy of the facility's Operating Certificate must be returned to the DOH Regional Office within 48 hours following the last resident's discharge. This can be accomplished by registered mail or hand delivery.
21. The plan should include very specific reference to how the facility will establish and maintain ongoing communication with DOH throughout each milestone of the closure process.
22. The plan to ensure adequate staffing throughout the closure process, and to ensure that staff have information regarding other employment opportunities.
23. When the last resident has been discharged from the facility, the individual(s) from the facility responsible for carrying out the closure plan should contact the appropriate DOH regional office to verify that all aspects of the closure plan have been successfully completed.
24. The operator of the facility closing shall indicate what the building will be used for once all the residents are transferred and the building is empty.

# NOTE:

**The closure plan submitted to the DOH regional office should include sufficient detail to clearly identify the steps the facility will take, and the individual responsible for ensuring the steps are successfully carried out. Simply stating that the activity will be carried out consistent with statute and regulation will not be sufficient. Please clearly explain the details of the activity.**