So Ordered.

Signed this 28 day of June, 2024.



_____
Robert E. Littlefield, Jr.
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Case No. 19-12215-1** |
| | **Chapter 11 (Main Case)** |
| **GOOD SAMARITAN LUTHERAN HEALTH** | **Case No. 19-12216-1** |
| **CARE CENTER, INC. d/b/a BETHLEHEM** | |
| **COMMONS CARE CENTER**, *et al.*,[1] | **Jointly Administered** |
| **Debtors.** | |

<u>**SEVENTH STIPULATION AND CONSENT ORDER APPROVING AMENDMENTS**</u>

This stipulation and consent order dated as of June 25, 2024, is made by, between, and among Steven J. Mitnick, Esq. as the Plan Administrator ("<u>Plan Administrator</u>") of Kenwood Manor Inc., f/k/a Good Samaritan Lutheran Home, Inc. ("<u>GSLH</u>") and Good Samaritan Lutheran Health Care Center, Inc. ("<u>GSLHC</u>" and together with GSLH, the "<u>Debtors</u>"), Delmar SNF

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Good Samaritan Lutheran Health Care Center, Inc. d/b/a Bethlehem Commons Care Center (0663) and Kenwood Manor, Inc. (8178).

7718529

Operations Associates, LLC ("Delmar SNF"), Delmar AH Operations Associates, LLC ("Delmar AH" and together with Delmar SNF, the "Operations Purchasers"), Delmar SNF Realty Associates, LLC ("Delmar SNF Realty"), Delmar AH Realty Associates, LLC ("Delmar AH Realty" and together with Delmar SNF Realty, the "Realty Purchasers" and together with the Operations Purchasers collectively, the "Purchasers"), Amalgamated Bank ("Bank"), and National Granite Title Insurance Agency, Inc. (together with the Debtors, Purchasers, and Bank, the "Parties") to amend to approve certain amendments (collectively, the "Amendments").

## RECITALS

**WHEREAS**, on December 12, 2019, GSLH and GSLHC each filed petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of New York (the "Court") to commence their bankruptcy cases, with such cases subsequently being jointly administered under Case No. 19-12215-1; the filings constituted orders for relief; the Debtors continued in possession of their assets and in management of their business as debtors and debtors-in-possession pursuant to Bankruptcy Code Section 1107 and 1108;

**WHEREAS**, the Debtors entered into (A) (i) the Asset Purchase Agreement dated as of December 10, 2019, by and between GSLHC and Delmar SNF, as amended by that certain Amendment to Asset Purchase Agreement dated February 27, 2020 (the "SNF APA"), and (ii) the Asset Purchase Agreement dated as of December 10, 2019, by and between GSLH and Delmar AH, as amended by that certain Amendment to Asset Purchase Agreement dated February 27, 2020 (the "AH APA," together with the SNF APA collectively, the "Asset Purchase Agreements"); (B) (i) the Purchase and Sale Agreement dated as of December 10, 2019, by and between GSLHC and Delmar SNF Realty (the "SNF Realty Agreement"), and (ii) the Purchase and Sale Agreement dated as of December 10, 2019, by and between GSLH and Delmar AH Realty (the "AH Realty

2

7718529

Agreement", together with the SNF Realty Agreement collectively, the "Real Estate Agreements"); (C) (i) the Receiver Agreement – Nursing Home dated as of May 28, 2020, by and between GSLHC and Delmar SNF (the "SNF Receiver Agreement"), and (ii) the Receiver Agreement – Adult Home dated as of May 28, 2020, by and between GSLH and Delmar AH (the "AH Receiver Agreement", together with the SNF Receiver Agreement collectively, the "Receivership Agreements" and together with the Asset Purchase Agreements and Real Estate Agreements, the "Sale Agreements"); and (D) that certain Debtor-in-Possession Credit Agreement dated as of January 9, 2020 with Amalgamated Bank, as subsequently amended (the "DIP Agreement");

**WHEREAS,** on December 2, 2020, the Debtors' Second Amended Joint Chapter 11 Plan of Liquidation (the "Plan") was confirmed by the Bankruptcy Court, the Debtors became Reorganized Debtors under the Bankruptcy Code, and Steven J. Mitnick, Esq. was appointed Plan Administrator pursuant to the terms of the Plan;

**WHEREAS,** the NYDOH has not yet approved the transfer of ownership of both of the Debtors' facilities to the Purchasers and therefore the parties have agreed to certain amendments to the Sale Agreements and DIP Agreement as further described herein;

**NOW, THEREFORE,** in consideration of the terms described herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the applicable Parties agree as follows:

1.    The Seventh Amendment to the Real Estate Agreements,[2] which is attached as **Exhibit A**, is hereby approved.

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Amendments.

3

2.      The Eighth Amendment to the Asset Purchase Agreements, which is attached as **Exhibit B**, is hereby approved.

3.      The Eleventh Amendment to the DIP Agreement, which is attached as **Exhibit C**, is hereby approved.

4.      The Fourth Extension Agreement, which is attached hereto as **Exhibit D** is hereby approved.

5.      This Stipulation and Consent Order may be executed by the Parties individually or in any combination, in one or more counterparts, each of which shall be deemed an original and all of which shall together in the aggregate constitute one and the same agreement. This Amendment may be executed and delivered by telecopier or other facsimile transmission or in ".pdf" format, all having the same force and effect as if the same was a fully executed and delivered original counterpart.

<p align="center">[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]</p>

7718529

**EXECUTION PAGE TO SEVENTH STIPULATION AND CONSENT ORDER:**

**"DEBTORS":**

**KENWOOD MANOR INC., f/k/a Good Samaritan Lutheran Home, Inc.**

By: _[signature]_
Name: Steven J. Mitnick, Esq.
Title:   Plan Administrator under Debtors' Second Amended Joint Chapter 11 Plan of Liquidation

**GOOD SAMARITAN LUTHERAN HEALTH CARE CENTER, INC.**

By: _[signature]_
Name: Steven J. Mitnick, Esq.
Title:   Plan Administrator under Debtors' Second Amended Joint Chapter 11 Plan of Liquidation

**"OPERATIONS PURCHASERS":**

**DELMAR AH OPERATIONS ASSOCIATES, LLC**

By: _____
Name: Kenneth Rozenberg
Title:   Managing Member

**DELMAR SNF OPERATIONS ASSOCIATES, LLC**

By: _____
Name: Kenneth Rozenberg
Title:   Managing Member

**"REALTY PURCHASERS":**

**DELMAR AH REALTY ASSOCIATES, LLC**

By: _____
Name: Daryl Hagler
Title:   Managing Member

**DELMAR SNF REALTY ASSOCIATES, LLC**

By: _____
Name: Daryl Hagler
Title:   Managing Member

**DELMAR SNF OPERATIONS ASSOCIATES, LLC, as Receiver**

By: _____
Name: Kenneth Rozenberg
Title:   Managing Member

**DELMAR AH OPERATIONS ASSOCIATES, LLC, as Receiver**

By: _____
Name: Kenneth Rozenberg
Title:   Managing Member

**AMALGAMATED BANK**

By: _____
Name:
Title:

**NATIONAL GRANITE TITLE INSURANCE AGENCY, INC.**

By: _[signature]_
Name: _Teame Stancauli_
Title: _Vice President_

5

**EXECUTION PAGE TO SEVENTH STIPULATION AND CONSENT ORDER:**

**"DEBTORS":**

**KENWOOD MANOR INC., f/k/a Good Samaritan Lutheran Home, Inc.**

By: _____
Name: Steven J. Mitnick, Esq.
Title:  Plan Administrator under Debtors' Second Amended Joint Chapter 11 Plan of Liquidation

**GOOD SAMARITAN LUTHERAN HEALTH CARE CENTER, INC.**

By: _____
Name: Steven J. Mitnick, Esq.
Title:   Plan Administrator under Debtors' Second Amended Joint Chapter 11 Plan of Liquidation

**"OPERATIONS PURCHASERS":**

**DELMAR AH OPERATIONS ASSOCIATES, LLC**

By: _____
Name: Kenneth Rozenberg
Title:  Managing Member

**DELMAR SNF OPERATIONS ASSOCIATES, LLC**

By: _____
Name: Kenneth Rozenberg
Title:  Managing Member

**"REALTY PURCHASERS":**

**DELMAR AH REALTY ASSOCIATES, LLC**

By: _____
Name: Daryl Hagler
Title:  Managing Member

**DELMAR SNF REALTY ASSOCIATES, LLC**

By: _____
Name: Daryl Hagler
Title:  Managing Member

**DELMAR SNF OPERATIONS ASSOCIATES, LLC, as Receiver**

By: _____
Name: Kenneth Rozenberg
Title:  Managing Member

**DELMAR AH OPERATIONS ASSOCIATES, LLC, as Receiver**

By: _____
Name: Kenneth Rozenberg
Title:  Managing Member

**AMALGAMATED BANK**

By: _____
Name:
Title:

**NATIONAL GRANITE TITLE INSURANCE AGENCY, INC.**

By: _____
Name:
Title:

5

**EXECUTION PAGE TO SEVENTH STIPULATION AND CONSENT ORDER:**

**"DEBTORS":**
**KENWOOD MANOR INC., f/k/a Good Samaritan Lutheran Home, Inc.**

By: _____
Name: Steven J. Mitnick, Esq.
Title:   Plan Administrator under Debtors'
Second Amended Joint Chapter 11 Plan of
Liquidation

**GOOD SAMARITAN LUTHERAN HEALTH CARE CENTER, INC.**

By: _____
Name: Steven J. Mitnick, Esq.
Title:   Plan Administrator under Debtors'
Second Amended Joint Chapter 11 Plan of
Liquidation

**"OPERATIONS PURCHASERS":**
**DELMAR AH OPERATIONS ASSOCIATES, LLC**

By: _____
Name: Kenneth Rozenberg
Title:   Managing Member

**DELMAR SNF OPERATIONS ASSOCIATES, LLC**

By: _____
Name: Kenneth Rozenberg
Title:   Managing Member

**"REALTY PURCHASERS":**
**DELMAR AH REALTY ASSOCIATES, LLC**

By: _____
Name: Daryl Hagler
Title:   Managing Member

**DELMAR SNF REALTY ASSOCIATES, LLC**

By: _____
Name: Daryl Hagler
Title:   Managing Member

**DELMAR SNF OPERATIONS ASSOCIATES, LLC, as Receiver**

By: _____
Name: Kenneth Rozenberg
Title:   Authorized Signatory

**DELMAR AH OPERATIONS ASSOCIATES, LLC, as Receiver**

By: _____
Name: Kenneth Rozenberg
Title:   Authorized Signatory

**AMALGAMATED BANK**

By: _____
Name: Melony Heh
Title: First Vice President

**NATIONAL GRANITE TITLE INSURANCE AGENCY, INC.**

By: _____
Name:
Title:

5

7718529

# EXHIBIT A

## SEVENTH AMENDMENT TO REAL ESTATE AGREEMENTS

This Seventh Amendment (the "Seventh Amendment")  is entered into as of June 25, 2024 by, between, and among Steven J. Mitnick, Esq. as the Plan Administrator ("Plan Administrator") of Kenwood Manor Inc., f/k/a Good Samaritan Lutheran Home, Inc. ("GSLH") and Good Samaritan Lutheran Health Care Center, Inc. ("GSLHC" and together with GSLH, the "Debtors"), National Granite Title Insurance Agency, Inc. ("NGTA"), Delmar SNF Realty Associates, LLC ("Delmar SNF"), Delmar AH Realty Associates, LLC ("Delmar AH" and together with Delmar SNF, the "Purchasers" and together with the Debtors, and NGTA, the "Parties") to amend (i) the Purchase and Sale Agreement dated as of December 10, 2019, by and between GSLHC and Delmar SNF Realty Associates, LLC, and (ii) the Purchase and Sale Agreement dated as of December 10, 2019, by and between GSLH and Delmar AH Realty Associates, LLC (the "Real Estate Agreements"), on the following terms and conditions:

**WHEREAS,** on December 12, 2019, GSLH and GSLHC each filed petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of New York (the "Court") to commence their bankruptcy cases, with such cases subsequently being jointly administered under Case No. 19-12215-1; the filings constituted orders for relief; the Debtors continued in possession of their assets and in management of their business as debtors and debtors-in-possession pursuant to Bankruptcy Code Section 1107 and 1108;

**WHEREAS,** on December 2, 2020, the Debtors' Second Amended Joint Chapter 11 Plan of Liquidation (the "Plan") was confirmed by the Bankruptcy Court, the Debtors became Reorganized Debtors under the Bankruptcy Code, and Steven J. Mitnick, Esq. was appointed Plan Administrator pursuant to the terms of the Plan;

**WHEREAS,** on March 22, 2022, the Parties entered into the First Amendment (the "First Amendment") to each of the Real Estate Agreements to adjust any reference to "24 months" after entry of the Sale Order (i.e., March 13, 2022) to instead reference September 30, 2022, including in, but not limited to, any such reference in sections 6.1.4, 6.2.4 & 7.3.5 of the Real Estate Agreements;

**WHEREAS,** on September 29, 2022, the Parties entered into the Second Amendment (the "Second Amendment") to further amend each of the Real Estate Agreements to adjust any reference to "24 months" after entry of the Sale Order (i.e., March 13, 2022), which was previously modified to "September 30, 2022" per the terms of the First Amendment, to instead reference December 31, 2022, including in, but not limited to, any such reference in sections 6.1.4, 6.2.4 & 7.3.5 of the Real Estate Agreements;

**WHEREAS,** on December 22, 2022, the Parties entered into the Third Amendment (the "Third Amendment") to further amend each of the Real Estate Agreements to adjust any reference to "24 months" after entry of the Sale Order (i.e., March 13, 2022), which was previously modified to "September 30, 2022" per the terms of the First Amendment and then to "December 31, 2022" per the terms of the Second Amendment, to instead reference March 31, 2023, including in, but not limited to, any such reference in sections 6.1.4, 6.2.4 & 7.3.5 of the Real Estate Agreements;

7718533

**WHEREAS**, on March 21, 2023, the Parties entered into the Fourth Amendment (the "Fourth Amendment") to further amend each of the Real Estate Agreements to adjust any reference to "24 months" after entry of the Sale Order (i.e., March 13, 2022), which was previously modified to "September 30, 2022" per the terms of the First Amendment and then to "December 31, 2022" per the terms of the Second Amendment, and then to "March 31, 2023" per the terms of the Third Amendment, to instead reference September 30, 2023, including in, but not limited to, any such reference in sections 6.1.4, 6.2.4 & 7.3.5 of the Real Estate Agreements;

**WHEREAS**, on September 25, 2023, the Parties entered into the Fifth Amendment (the "Fifth Amendment") to further amend each of the Real Estate Agreements to adjust any reference to "24 months" after entry of the Sale Order (i.e., March 13, 2022), which was previously modified to "September 30, 2022" per the terms of the First Amendment, and then to "December 31, 2022" per the terms of the Second Amendment, and then to "March 31, 2023" per the terms of the Third Amendment, and then to "September 30, 2023" per the terms of the Fourth Amendment to instead reference December 31, 2023, including in, but not limited to, any such reference in sections 6.1.4, 6.2.4 & 7.3.5 of the Real Estate Agreements;

**WHEREAS**, on December 20, 2023, the Parties entered into the Sixth Amendment (the "Sixth Amendment") to further amend each of the Real Estate Agreements to adjust any reference to "24 months" after entry of the Sale Order (i.e., March 13, 2022), which was previously modified to "September 30, 2022" per the terms of the First Amendment, and then to "December 31, 2022" per the terms of the Second Amendment, and then to "March 31, 2023" per the terms of the Third Amendment, and then to "September 30, 2023" per the terms of the Fourth Amendment, and then to December 31, 2023 per the terms of the Fifth Amendment, to instead reference June 30, 2024, including in, but not limited to, any such reference in sections 6.1.4, 6.2.4 & 7.3.5 of the Real Estate Agreements;

**WHEREAS**, the Parties are entering into this Seventh Amendment (the "Seventh Amendment") to further amend each of the Real Estate Agreements to adjust any reference to "24 months" after entry of the Sale Order (i.e., March 13, 2022), which was previously modified to "September 30, 2022" per the terms of the First Amendment, and then to "December 31, 2022" per the terms of the Second Amendment, and then to "March 31, 2023" per the terms of the Third Amendment, and then to "September 30, 2023" per the terms of the Fourth Amendment, and then to "December 31, 2023" per the terms of the Fifth Amendment, and then to "June 30, 2024" per the terms of the Sixth Amendment, to instead reference September 30, 2024, including in, but not limited to, any such reference in sections 6.1.4, 6.2.4 & 7.3.5 of the Real Estate Agreements;

**WHEREAS, THEREFORE**, in consideration of the terms described herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. The effectiveness of this Seventh Amendment is conditioned on the execution and performance of the Fourth Extension Agreement dated as of June 25, 2024 between the Debtors, Amalgamated Bank, SNF Operations Associates, LLC, Delmar AH Operations Associates, LLC, Delmar SNF, Delmar AH, and the payment of the Extension Fee defined therein, as is further set forth in the Fourth Extension Agreement.

2.      Each of the Real Estate Agreements are hereby amended to adjust any reference to "24 months" after entry of the Sale Order (i.e., March 13, 2022), which was previously modified to "September 30, 2022" per the terms of the First Amendment and then to "December 31, 2022" per the terms of the Second Amendment, and then to "March 31, 2023" per the terms of the Third Amendment, and then to "September 30, 2023" per the terms of the Fourth Amendment, and then to "December 31, 2023" per the terms of the Fifth Amendment, and then to "June 30, 2024" per the terms of the Sixth Amendment, to instead reference September 30, 2024.  This includes, but is not limited to, any such reference in sections 6.1.4, 6.2.4 & 7.3.5 of the Real Estate Agreements, which are all hereby amended.

3.      This Amendment is binding upon, and inures to the benefit of, the Parties and their respective successors and assigns, including the Plan Administrator.

4.      This Amendment may be executed by the Parties individually or in any combination, in one or more counterparts, each of which shall be deemed an original and all of which shall together in the aggregate constitute one and the same agreement.  This Amendment may be executed and delivered by telecopier or other facsimile transmission or in ".pdf" format, all having the same force and effect as if the same was a fully executed and delivered original counterpart.

5.      Pursuant to section 18.2 of the Real Estate Agreements, the Debtors shall request the Bankruptcy Court's approval of this Amendment.

**IN WITNESS WHEREOF**, the parties hereto have caused this Amendment to each of the Real Estate Agreements to be executed by their respective officers duly authorized, as of the date first written above.

[remainder of page left intentionally blank]

3

7718533

**EXECUTION PAGE TO SEVENTH AMENDMENT TO REAL ESTATE AGREEMENTS:**

**"DEBTORS":**
**KENWOOD MANOR INC., f/k/a Good**
**Samaritan Lutheran Home, Inc.**

By: _[signature]_____
Name: Steven J. Mitnick, Esq.
Title:   Plan Administrator under Debtors'
Second Amended Joint Chapter 11 Plan of
Liquidation

**GOOD SAMARITAN LUTHERAN**
**HEALTH CARE CENTER, INC.**

By: _[signature]_____
Name: Steven J. Mitnick, Esq.
Title:   Plan Administrator under Debtors'
Second Amended Joint Chapter 11 Plan of
Liquidation

**"PURCHASERS":**
**DELMAR AH REALTY**
**ASSOCIATES, LLC**

By: _____
Name: Daryl Hagler
Title:   Managing Member

**DELMAR SNF REALTY**
**ASSOCIATES, LLC**

By: _____
Name: Daryl Hagler
Title:   Managing Member

4

7718533

**EXECUTION PAGE TO SEVENTH AMENDMENT TO REAL ESTATE AGREEMENTS:**

**"DEBTORS"**:
**KENWOOD MANOR INC., f/k/a Good
Samaritan Lutheran Home, Inc.**

By: _____
Name: Steven J. Mitnick, Esq.
Title:   Plan Administrator under Debtors'
Second Amended Joint Chapter 11 Plan of
Liquidation

**GOOD SAMARITAN LUTHERAN
HEALTH CARE CENTER, INC.**

By: _____
Name: Steven J. Mitnick, Esq.
Title:   Plan Administrator under Debtors'
Second Amended Joint Chapter 11 Plan of
Liquidation

**"PURCHASERS"**:
**DELMAR AH REALTY
ASSOCIATES, LLC**

By: _____
Name: Daryl Hagler
Title:   Managing Member

**DELMAR SNF REALTY
ASSOCIATES, LLC**

By: _____
Name: Daryl Hagler
Title:   Managing Member

4

# EXHIBIT B

## EIGHTH AMENDMENT TO ASSET PURCHASE AGREEMENTS

This Eighth Amendment (the "Eighth Amendment") is entered into as of June 25, 2024 by, between, and among Steven J. Mitnick, Esq. as the Plan Administrator ("Plan Administrator") of Kenwood Manor Inc., f/k/a Good Samaritan Lutheran Home, Inc. ("GSLH") and Good Samaritan Lutheran Health Care Center, Inc. ("GSLHC" and together with GSLH, the "Debtors"), Delmar SNF Operations Associates, LLC ("Delmar SNF") and Delmar AH Operations Associates, LLC ("Delmar AH" and together with Delmar SNF, the "Operations Purchasers" and together with the Debtors, the "Parties") to amend (i) the Asset Purchase Agreement dated as of December 10, 2019, by and between GSLHC and Delmar SNF, as amended, and (ii) the Asset Purchase Agreement dated as of December 10, 2019, by and between GSLH and Delmar AH, as amended (the "APAs"), on the following terms and conditions:

**WHEREAS**, on December 12, 2019, GSLH and GSLHC each filed petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of New York (the "Court") to commence their bankruptcy cases, with such cases subsequently being jointly administered under Case No. 19-12215-1;

**WHEREAS**, on December 2, 2020, the Debtors' Second Amended Joint Chapter 11 Plan of Liquidation (the "Plan") was confirmed by the Bankruptcy Court, the Debtors became Reorganized Debtors under the Bankruptcy Code, and Steven J. Mitnick, Esq. was appointed Plan Administrator pursuant to the terms of the Plan;

**WHEREAS**, on February 24, 2020, a Notice of Amendment (the "First Amendment") to the APAs was filed, which, among other things, incorporated changes relevant to the Union;

**WHEREAS**, on March 22, 2022, the Parties entered into the Second Amendment (the "Second Amendment") to the APAs[1] to adjust any reference "twelve (12) months" and "twenty four (24) months" after entry of the Sale Order (i.e., March 13, 2021 and March 13, 2022, respectively) to "September 30, 2022", including in, but not limited to, any such reference in section 4.4(c) of the APAs;

**WHEREAS**, on September 29, 2022, the Parties entered into the Third Amendment (the "Third Amendment") to the APAs to adjust any reference to "twelve (12) months" and "twenty four (24) months" after entry of the Sale Order (i.e., March 13, 2021 and March 13, 2022, respectively), which was previously modified to "September 30, 2022" per the terms of the Second Amendment, to instead reference December 31, 2022, including in, but not limited to, any such reference in section 4.4(c) of the APAs;

**WHEREAS**, on December 22, 2022, the Parties entered into the Fourth Amendment (the "Fourth Amendment") to further amend the APAs to further adjust any reference "twelve (12) months" and "twenty four (24) months" after entry of the Sale Order (i.e., March 13, 2021 and March 13, 2022, respectively), which was previously modified to "September 30, 2022" per the terms of the Second Amendment, and then modified to "December 31, 2022" per the terms of the

---

[1] Inadvertently, the Parties only referenced the Delmar SNF asset purchase agreement, however, the Parties intended the Second Amendment and the subsequent amendments to cover the APAs (as defined herein).

7718543

Third Amendment, and then modified to "March 31, 2023" per the terms of the Fourth Amendment, including in, but not limited to, any such reference in section 4.4(c) of the APAs;

**WHEREAS**, on March 21, 2023, the Parties entered into the Fifth Amendment (the "Fifth Amendment") to further amend the APAs to further adjust any reference to "twelve (12) months" and "twenty four (24) months" after entry of the Sale Order (i.e., March 13, 2021 and March 13, 2022, respectively), which was previously modified to "September 30, 2022" per the terms of the Second Amendment, and then modified to "December 31, 2022" per the terms of the Third Amendment, and then modified to "March 31, 2023" per the terms of the Fourth Amendment, and then modified to "September 30, 2023" per the terms of the Fifth Amendment, including in, but not limited to, any such reference in section 4.4(c) of the APAs;

**WHEREAS**, on September 25, 2023, the Parties entered into the Sixth Amendment (the "Sixth Amendment") to further amend the APAs to further adjust any reference to "twelve (12) months" and "twenty four (24) months" after entry of the Sale Order (i.e., March 13, 2021 and March 13, 2022, respectively), which was previously modified to "September 30, 2022" per the terms of the Second Amendment, and then modified to "December 31, 2022" per the terms of the Third Amendment, and then modified to "March 31, 2023" per the terms of the Fourth Amendment, and then modified to "September 30, 2023" per the terms of the Fifth Amendment, and then modified to "December 31, 2023" per the terms of the Sixth Amendment, including in, but not limited to, any such reference in section 4.4(c) of the APAs;

**WHEREAS**, on December 20, 2023, the Parties entered into the Seventh Amendment (the "Seventh Amendment") to further amend the APAs to further adjust any reference to "twelve (12) months" and "twenty four (24) months" after entry of the Sale Order (i.e., March 13, 2021 and March 13, 2022, respectively), which was previously modified to "September 30, 2022" per the terms of the Second Amendment, and then modified to "December 31, 2022" per the terms of the Third Amendment, and then modified to "March 31, 2023" per the terms of the Fourth Amendment, and then modified to "September 30, 2023" per the terms of the Fifth Amendment, and then modified to "December 31, 2023" per the terms of the Sixth Amendment, and then modified to "June 30, 2024" per the terms of the Seventh Amendment including in, but not limited to, any such reference in section 4.4(c) of the APAs;

**WHEREAS**, the parties are entering into this Eighth Amendment (the "Eighth Amendment") to further amend the APAs to further adjust any reference to "twelve (12) months" and "twenty four (24) months" after entry of the Sale Order (i.e., March 13, 2021 and March 13, 2022, respectively), which was previously modified to "September 30, 2022" per the terms of the Second Amendment, and then modified to "December 31, 2022" per the terms of the Third Amendment, and then modified to "March 31, 2023" per the terms of the Fourth Amendment, and then modified to "September 30, 2023" per the terms of the Fifth Amendment, and then modified to "December 31, 2023" per the terms of the Sixth Amendment, and then modified to "June 30, 2024" per the terms of the Seventh Amendment to instead reference September 30, 2024, including in, but not limited to, any such reference in section 4.4(c) of the APAs;

7718543

**WHEREAS, THEREFORE**, in consideration of the terms described herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      The effectiveness of this Eighth Amendment is conditioned on the execution and performance of the Fourth Extension Agreement dated as of June 25, 2024 between the Debtors, Amalgamated Bank, Delmar SNF, Delmar AH Operations Associates, LLC, Delmar SNF Realty Associates, LLC, Delmar AH Realty Associates, LLC and the payment of the Extension Fee defined therein, as is further set forth in the Fourth Extension Agreement.

2.      The APAs are hereby amended to further adjust any reference to "twelve (12) months" and "twenty four (24) months" after entry of the Sale Order (i.e., March 13, 2021 and March 13, 2022, respectively), which was previously modified to "September 30, 2022" per the terms of the Second Amendment, and then modified to "December 31, 2022" per the terms of the Third Amendment, and then modified to "March 31, 2023" per the terms of the Fourth Amendment, and then modified to "September 30, 2023" per the terms of the Fifth Amendment, and then modified to "December 31, 2023" per the terms of the Sixth Amendment, and then modified to "June 30, 2024" per the terms of the Seventh Amendment to instead reference September 30, 2024. This includes, but is not limited to any such reference in section 4.4(c) of the APAs, which are all hereby amended.

3.      This Amendment is binding upon, and inures to the benefit of, the Parties and their respective successors and assigns, including the Plan Administrator.

4.      This Amendment may be executed by the Parties individually or in any combination, in one or more counterparts, each of which shall be deemed an original and all of which shall together in the aggregate constitute one and the same agreement. This Amendment may be executed and delivered by telecopier or other facsimile transmission or in ".pdf" format, all having the same force and effect as if the same was a fully executed and delivered original counterpart.

5.      Pursuant to section 12.5 of the APAs, the Debtor shall request the Bankruptcy Court's approval of this Amendment.

**IN WITNESS WHEREOF**, the parties hereto have caused this Amendment to the APAs to be executed by their respective officers duly authorized, as of the date first written above.

[remainder of page left intentionally blank]

3

7718543

**EXECUTION PAGE TO EIGHTH AMENDMENT TO ASSET PURCHASE
AGREEMENTS:**

**"DEBTORS":**

**KENWOOD MANOR INC., f/k/a Good
Samaritan Lutheran Home, Inc.**

By: _____

Name: Steven J. Mitnick, Esq.

Title:   Plan Administrator under Debtors'
Second Amended Joint Chapter 11 Plan of
Liquidation

**GOOD SAMARITAN LUTHERAN
HEALTH CARE CENTER, INC.**

By: _____

Name: Steven J. Mitnick, Esq.

Title:   Plan Administrator under Debtors'
Second Amended Joint Chapter 11 Plan of
Liquidation

**"OPERATIONS PURCHASERS":**

**DELMAR AH OPERATIONS
ASSOCIATES, LLC**

By: _____

Name: Kenneth Rozenberg

Title:   Managing Member

**DELMAR SNF OPERATIONS
ASSOCIATES, LLC**

By: _____

Name: Kenneth Rozenberg

Title:   Managing Member

4

7718543

**EXECUTION PAGE TO EIGHTH AMENDMENT TO ASSET PURCHASE AGREEMENTS:**

**"DEBTORS":**
**KENWOOD MANOR INC., f/k/a Good Samaritan Lutheran Home, Inc.**

By: _____
Name: Steven J. Mitnick, Esq.
Title:  Plan Administrator under Debtors'
Second Amended Joint Chapter 11 Plan of
Liquidation

**GOOD SAMARITAN LUTHERAN HEALTH CARE CENTER, INC.**

By: _____
Name: Steven J. Mitnick, Esq.
Title:  Plan Administrator under Debtors'
Second Amended Joint Chapter 11 Plan of
Liquidation

**"OPERATIONS PURCHASERS":**
**DELMAR AH OPERATIONS ASSOCIATES, LLC**

By: _____
Name: Kenneth Rozenberg
Title:  Managing Member

**DELMAR SNF OPERATIONS ASSOCIATES, LLC**

By: _____
Name: Kenneth Rozenberg
Title:  Managing Member

4

7718543

# EXHIBIT C

## ELEVENTH AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT

This Eleventh Amendment to the Debtor-in-Possession Credit Agreement (the "Eleventh Amendment") is entered into as of June 25, 2024, and is made and executed by, between, and among Kenwood Manor Inc., f/k/a Good Samaritan Lutheran Home, Inc., Debtor and Debtor-in-Possession under Chapter 11 of the United States Code ("GSLH"), Good Samaritan Lutheran Health Care Center, Inc., Debtor and Debtor-in-Possession under Chapter 11 of the United States Bankruptcy Code ("GSLHC") (GSLH and GSLHC being referred to jointly and severally as the "Borrowers"), and Amalgamated Bank (the "Lender" and together with the Borrowers, the "Parties"), on the following terms and conditions:

**WHEREAS**, the Borrowers and the Lender are parties to that certain Debtor-in-Possession Credit Agreement dated as of January 9, 2020 (the "DIP Agreement") pursuant to which the Lender agreed to provide certain debtor-in-possession financing to the Borrowers during the pendency of their proceedings under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code");

**WHEREAS**, on December 12, 2019, GSLH and GSLHC each filed petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of New York (the "Court") to commence their bankruptcy cases, with such cases subsequently being jointly administered under Case No. 19-12215-1; the filings constituted orders for relief; the Borrowers continued in possession of their assets and in management of their business as debtors and debtors-in-possession pursuant to Bankruptcy Code Section 1107 and 1108; and on December 2, 2020, the Borrowers' Second Amended Joint Chapter 11 Plan of Liquidation (the "Plan") was confirmed by the Bankruptcy Court, the Borrowers became Reorganized Debtors under the Bankruptcy Code, and Steven J. Mitnick, Esq. was appointed as plan administrator (the "Plan Administrator") pursuant to the terms of the Plan;

**WHEREAS**, the Borrowers entered into (A) (i) the Asset Purchase Agreement dated as of December 10, 2019, by and between GSLHC and Delmar SNF Operations Associates, LLC ("Delmar SNF"), as amended by that certain Amendment to Asset Purchase Agreement dated February 27, 2020, and (ii) the Asset Purchase Agreement dated as of December 10, 2019, by and between GSLH and Delmar AH Operations Associates, LLC ("Delmar AH" and together with Delmar SNF, the "Operations Purchasers"), as amended (collectively, the "APAs"); (B) (i) the Purchase and Sale Agreement dated as of December 10, 2019, by and between GSLHC and Delmar SNF Realty Associates, LLC ("Delmar SNF Realty"), and (ii) the Purchase and Sale Agreement dated as of December 10, 2019, by and between GSLH and Delmar AH Realty Associates, LLC ("Delmar AH Realty" and together with Delmar SNF Realty, the "Realty Purchasers" and together with the Operations Purchasers collectively, the "Purchasers"), as amended (the "Real Estate Agreements"); (C) (i) the Receiver Agreement – Nursing Home dated as of May 28, 2020, by and between GSLHC and Delmar SNF Operations Associates, LLC, and (ii) the Receiver Agreement – Adult Home dated as of May 28, 2020, by and between GSLH and Delmar AH Operations Associates, LLC (the "Receivership Agreements" and together with the APAs and Real Estate Agreements, the "Sale Agreements");

**WHEREAS**, pursuant to the DIP Agreement, the Parties executed that certain Promissory Note dated December 27, 2019 in the principal amount of One Million and 00/100 Dollars

1

7718551

($1,000,000.00) (the "Note") and that certain Security Agreement dated December 27, 2019, which granted the Lender, as a secured party, an interest in all the collateral more fully described therein in order to secure the obligations of the Borrowers under the Note (the "Security Agreement");

WHEREAS, the Parties executed and entered into that certain First Amendment to Debtor-in-Possession Credit Agreement on March 26, 2020 (the "First Amendment") which, among other things, revised and amended Section 10.6 of the DIP Agreement;

WHEREAS, the Parties executed and entered into that certain Second Amendment to Debtor-in-Possession Credit Agreement on December 10, 2020 (the "Second Amendment") which, among other things, set forth Borrowers' acknowledgements of certain existing defaults under the DIP Agreement, permitted advances to the Borrowers and any future Plan Administrator to cover DIP loan interest and other approved expenses subject to a $75,000 cap, and extended certain milestones, including the extension of the maturity date and forbearance period through March 31, 2021;

WHEREAS, the Parties executed and entered into that certain Third Amendment to Debtor-in-Possession Credit Agreement on March 31, 2021 (the "Third Amendment") which, among other things, set forth Borrowers' acknowledgements of certain existing defaults under the DIP Agreement and extended the maturity date and forbearance period through December 31, 2021;

WHEREAS, the Parties executed and entered into that certain Fourth Amendment to Debtor-in-Possession Credit Agreement on November 21, 2021 (the "Fourth Amendment"), which, among other things, set forth Borrowers' acknowledgements of certain existing defaults under the DIP Agreement, addressed certain taxes, water, and sewer charges, and extended the maturity date and forbearance period through and including March 31, 2022;

WHEREAS, the Parties executed and entered into that certain Fifth Amendment to Debtor-in-Possession Credit Agreement on March 4, 2022 (the "Fifth Amendment"), which, among other things, set forth Borrowers' acknowledgements of certain existing defaults under the DIP Agreement, and extended the Maturity Date and forbearance period, from March 31, 2022 to the earlier of (a) September 30, 2022 and (b) the date of any termination under the DIP Agreement or the Sale Agreements, on the terms and conditions set forth therein;

WHEREAS, the Parties executed and entered into that certain Sixth Amendment to Debtor-in-Possession Credit Agreement on September 29, 2022 (the "Sixth Amendment"), which, among other things, set forth Borrowers' acknowledgements of certain existing defaults under the DIP Agreement, and extended the Maturity Date and forbearance period, from September 30, 2022 to the earlier of (a) December 31, 2022 and (b) the date of any termination under the DIP Agreement or the Sale Agreements, on the terms and conditions set forth therein;

WHEREAS, the Parties executed and entered into that certain Seventh Amendment to Debtor-in-Possession Credit Agreement on December 22, 2022 (the "Seventh Amendment"), which, among other things, set forth Borrowers' acknowledgements of certain existing defaults under the DIP Agreement, and extended the Maturity Date and forbearance period , from

2

December 31, 2022 to the earlier of (a) March 31, 2023 and (b) the date of any termination under the DIP Agreement or the Sale Agreements, on the terms and conditions set forth therein;

**WHEREAS**, the Parties executed and entered into that certain Eighth Amendment to Debtor-in-Possession Credit Agreement on March 21, 2023 (the "Eighth Amendment"), which, among other things, set forth Borrowers' acknowledgements of certain existing defaults under the DIP Agreement, and extended the Maturity Date and forbearance period, from March 31, 2023 to the earlier of (a) September 30, 2023 and (b) the date of any termination under the DIP Agreement or the Sale Agreements, on the terms and conditions set forth therein;

**WHEREAS**, the Parties executed and entered into that certain Ninth Amendment to Debtor-in-Possession Credit Agreement on September 25, 2023 (the "Ninth Amendment"), which, among other things, set forth Borrowers' acknowledgements of certain existing defaults under the DIP Agreement, and extended the Maturity Date and forbearance period , from September 30, 2023 to the earlier of (a) December 31, 2023 and (b) the date of any termination under the DIP Agreement or the Sale Agreements, on the terms and conditions set forth therein;

**WHEREAS**, the Parties executed and entered into that certain Tenth Amendment to Debtor-in-Possession Credit Agreement on December 20, 2023 (the "Tenth Amendment"), which, among other things, set forth Borrowers' acknowledgements of certain existing defaults under the DIP Agreement, and extended the Maturity Date and forbearance period, from December 31, 2023 to the earlier of (a) June 30, 2024 and (b) the date of any termination under the DIP Agreement or the Sale Agreements, on the terms and conditions set forth therein;

**WHEREAS**, prior to and after execution of the First Amendment, the Borrowers defaulted under the terms of the DIP Agreement, as is further set forth in the Second Amendment;

**WHEREAS**, notwithstanding the Borrowers' continuing defaults, the Lender has agreed, subject to and in accordance with the terms of this Eleventh Amendment, to forbear from seeking to enforce its rights and remedies resulting from the Borrowers' defaults, so long as the Borrowers comply with the terms of this Eleventh Amendment, the Final Order and DIP Agreement, all as is further set forth below;

**WHEREAS**, the obligations under the DIP Agreement, Note, and Security Agreement are herein reaffirmed in full, except to the extent agreed as set forth herein, which in no event shall effect or act as a waiver and/or cure of the Borrowers' Defaults and Events of Default;

**WHEREAS**, the Parties are entering into this Eleventh Amendment to extend the Maturity Date and Forbearance Period (defined below), from the earlier of (a) June 30, 2024 and (b) the date of any termination under the DIP Agreement or the Sale Agreements, to the earlier of (a) September 30, 2024 and (b) the date of any termination under the DIP Agreement or the Sale Agreements, on the terms and conditions set forth herein;

**WHEREAS, THEREFORE**, in consideration of the terms described herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

3

7718551

1.      The effectiveness of this Eleventh Amendment is conditioned on the execution and performance of the Fourth Extension Agreement dated as of June 25, 2024 between the Parties and Purchasers, and the payment by the Purchasers of the Extension Fee defined therein, as is further set forth in the Fourth Extension Agreement.

2.      Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Agreement.  Notwithstanding anything in the DIP Agreement, any references to the Borrowers herein and in the DIP Agreement shall include the Plan Administrator.

3.      Acknowledgment and Preservation of Borrowers' Defaults:  As provided in prior amendments, the Borrowers are in default of the Final Order and DIP Agreement.  The Lender's rights to assert additional Events of Default are hereby preserved.  Borrowers further acknowledge and agree that Lender is not in any way agreeing to waive such existing Defaults and Events of Default, as a result of this Eleventh Amendment or the performance by the Parties of their respective obligations hereunder or thereunder.  Nothing in this Eleventh Amendment or the performance hereunder or thereunder shall waive or cure the existing Defaults and Events of Default, which are continuing, not waived by the Lender, and not cured by, or on behalf of, the Borrowers through this Eleventh Amendment or otherwise.

4.      Acknowledgment and Preservation of Lender's Rights & Remedies:  As set forth in prior amendments, pursuant to section 11 of the DIP Agreement, "[i]f any Event of Default shall occur and be continuing, then . . . all commitments and obligations of the Lender under this DIP Agreement and under the Related Documents shall cease at once (including any obligation to make further Advances or disbursements)."  DIP Agreement, §11.  Accordingly, the parties previously agreed that all of Lender's commitments and obligations under the DIP Agreement had terminated.  Such termination remains effective, and the Lender hereby continues to reserve all of its rights, including its rights to any remedies available to the Lender now or in future on account of any Defaults and Events of Default, and no such rights or remedies have been waived, abandoned, discontinued, or in any other manner precluded from exercise, nor will the failure of the Lender to exercise any rights or remedies available to it, contained in this Eleventh Amendment, the Final Order and DIP Agreement, at law, or at equity, are in any way waived, abandoned, discontinued, or in any other manner precluded from exercise.  This Eleventh Amendment and performance hereunder is not intended to, and does not effect, a waiver or cure of any existing Defaults or Events of Default, and all of Lender's rights with respect to any Default or Event of Default, and any event or condition that would constitute such a Default or Event of Default are expressly reserved and preserved.

5.      Lender's Agreement to Forbear:  Notwithstanding the Borrowers' Defaults and Events of Default, subject to and in consideration for the terms, conditions, and limitations set forth herein, and subject to each Borrower's ongoing satisfaction of the terms and conditions set forth herein and in the Final Order and DIP Agreement, the Lender shall not, through and including the earlier of (a) September 30, 2024, and (b) the date of any termination under the DIP Agreement or the Sale Agreements (the "Forbearance Period"): (i) charge, or add to Lender's claims, the default rate of interest described in section 2 of the Note as 11% per annum for any period prior to the date of this Amendment; (ii) enforce its right to receive immediate payment on account of outstanding and

4

future attorneys' fees and costs, which attorneys' fees and costs shall instead continue to accrue, be added to the Borrowers' debt and Lender's claims, and paid on the Maturity Date; or (iii) seek to execute on or otherwise enforce its further rights and remedies. Lender's agreement to forbear under this section is expressly conditioned upon each Borrower's ongoing satisfaction of the conditions set forth in this Eleventh Amendment and in the Final Order and DIP Agreement, including, but not limited to, each Borrower's compliance with the below:

     a.  <u>Maturity Date</u>: The Maturity Date shall be the earlier of (a) September 30, 2024, and (b) the date of any termination under the DIP Agreement or the Sale Agreements, on or before which the Borrowers shall make payment in full to the Lender of the Obligations and the obligations under the Amalgamated Prepetition Loan.

     b.  <u>CON Approval</u>:  A Certificate of Need application with respect to GSLHC, with or without contingencies, must be approved by the Public Health and Health Planning Council during, or no later than, its next regularly scheduled meeting (i.e., the meeting presently scheduled for September 12, 2024) (the "<u>CON Approval</u>").

Failure to comply with the CON Approval shall be an Event of Default under the DIP Agreement. Notwithstanding the foregoing, nothing in this Eleventh Amendment shall waive or cure Borrowers' existing Defaults and Events of Default.  The Defaults and Events of Default are continuing and have not been waived by the Lender or cured by or on behalf of the Borrower through this Eleventh Amendment or any prior amendment, performance under this Eleventh Amendment or any prior amendment, or otherwise.  Lender's forbearance and acceptance of payment shall not constitute or be deemed to constitute a cure or waiver of the Defaults and Events of Default. Moreover, Lender's agreement to forbear from exercising any remedies that it may have against Borrowers as a result of the occurrence of the existing Defaults and Events of Defaults shall not be deemed a continuing waiver or forbearance with respect to any Defaults of Events of Default of a similar nature that may occur after the date of this Eleventh Amendment.

     6.    <u>Notice & Cure</u>: Any future default under the Final Order, DIP Agreement, including prior amendments thereto or this Eleventh Amendment, including with respect to Borrower's noncompliance with the Maturity Date and the CON Approval, shall constitute an Event of Default governed by section 11 of the DIP Agreement, shall automatically terminate Lender's forbearance hereunder, and shall permit Lender to execute any of its rights and remedies after the Five-Day Notice Period defined in the DIP Agreement.  Upon the earlier expiration or termination of the forbearance hereunder, Lender shall be entitled to act upon the further Defaults and Events of Defaults, and enforce any and all of its rights and remedies with respect to same or otherwise.

     7.    <u>Release and Termination of Lender's Obligations</u>.  All commitments and obligations of Lender under the Second Amendment are hereby ceased and terminated. Moreover, each Borrower, for itself and on behalf of its successors, assigns, heirs and legal representatives, hereby waives, releases, remises and forever discharges the Lender, and its parent, subsidiaries and affiliates, and each of their successors and assigns, past and present officers, directors, employees and agents (each a "<u>Releasee</u>" and collectively, the "<u>Releasees</u>"), from any and all past and present claims, suits, liens, lawsuits, adverse consequences, amounts paid in settlement, debts, deficiencies, diminution in value, disbursements, demands, obligations, liabilities, causes of action, damages,

5

7718551

losses, costs and expenses of any kind or character, whether based in equity, law, contract, tort, implied or express warranty, strict liability, criminal or civil statute or common law (each a "Claim" and, collectively, the "Claims"), whether known or unknown, fixed or contingent, direct, indirect, or derivative, asserted or unasserted, matured or unmatured, foreseen or unforeseen, past or present, liquidated or unliquidated, suspected or unsuspected, which the Borrower ever had, now has, or in the future may have against any such Releasee, including, but not limited to any claims and objections as to Lender's attorneys' fees and expenses.

8.      Additional Advance Requests. Given that the total principal loan amount of $1,000,000 originally reflected in the DIP Agreement is expended, Lender shall no longer make any Advances to the Borrowers.

9.      Each Borrower hereby represents and warrants to the Lender that except as to the Defaults and Events of Default referenced herein, each and every of the representations and warranties set forth in the DIP Agreement, Note, and Security Agreement, along with any Related Documents, is true as of the date hereof and with the same effect as though made on the date hereof, and is hereby incorporated herein in full by reference as if fully restated herein in its entirety.

10.      Except as to Lender's obligations, which are terminated, the DIP Agreement, Note, and Security Agreement, and all Related Documents, shall remain in full force and effect, and this Eleventh Amendment shall not waive or cure Borrowers' existing Defaults and Events of Default.

11.      All obligations under the DIP Agreement and Note, each as amended hereby, are and shall continue to be secured by the Collateral referenced in and more fully described in the Security Agreement.

12.      The provisions set forth herein are limited precisely as written and shall not be deemed to prejudice any right or rights which the Lender may now have or may have in the future under or in connection with the DIP Agreement or Note or Security Agreement or any Related Documents. Whenever the DIP Agreement is referred to in the Note, Security Agreement, Related Documents, or any order or paper entered by the Court, it shall be deemed to mean the DIP Agreement as modified by prior amendments and this Eleventh Amendment.

13.      This Eleventh Amendment is binding upon, and inures to the benefit of, the parties and their respective successors and assigns, including the Plan Administrator.

14.      This Eleventh Amendment shall be effective as of the date first above written; *provided that* this Eleventh Amendment shall not be effective unless and until the Lender shall have received the Extension Fee and counterparts of this Eleventh Amendment duly signed by each Borrower representative (the Plan Administrator).

15.      This Eleventh Amendment may be executed by the Parties individually or in any combination, in one or more counterparts, each of which shall be deemed an original and all of which shall together in the aggregate constitute one and the same agreement. This Eleventh Amendment may be executed and delivered by telecopier or other facsimile transmission or in

6

".pdf" format, all having the same force and effect as if the same was a fully executed and delivered original counterpart.

[remainder of page left intentionally blank]

7

**EXECUTION PAGE TO TENTH AMENDMENT TO DEBTOR-IN-POSSESSION
CREDIT AGREEMENT:**

**"BORROWERS":**

**KENWOOD MANOR INC., f/k/a Good Samaritan Lutheran Home, Inc.,
Debtor**

By: _____

**Title: Plan Administrator under Debtors' Second Amended Joint
Chapter 11 Plan of Liquidation**

**GOOD SAMARITAN LUTHERAN HEALTH CARE CENTER, INC.,
Debtor**

By: _____

**Title: Plan Administrator under Debtors' Second Amended Joint
Chapter 11 Plan of Liquidation**

**"LENDER":**

**AMALGAMATED BANK**

By: _____

Title: _____

8

7718551

**EXECUTION PAGE TO TENTH AMENDMENT TO DEBTOR-IN-POSSESSION
CREDIT AGREEMENT:**

**"BORROWERS":**

**KENWOOD MANOR INC., f/k/a Good Samaritan Lutheran Home, Inc.,
Debtor**

By: _____

**Title: Plan Administrator under Debtors' Second Amended Joint
Chapter 11 Plan of Liquidation**

**GOOD SAMARITAN LUTHERAN HEALTH CARE CENTER, INC.,
Debtor**

By: _____

**Title: Plan Administrator under Debtors' Second Amended Joint
Chapter 11 Plan of Liquidation**

**"LENDER":**

**AMALGAMATED BANK**

By: ___Melony Heh_____

Title: ___First Vice President_____

8

# EXHIBIT D

## FOURTH EXTENSION AGREEMENT

This agreement (the or this "Fourth Agreement") is made as of June 25, 2024, and is made by, between, and among Steven J. Mitnick, Esq. as the Plan Administrator ("Plan Administrator") appointed in the bankruptcy cases of Kenwood Manor Inc., f/k/a Good Samaritan Lutheran Home, Inc. ("GSLH") and Good Samaritan Lutheran Health Care Center, Inc. ("GSLHC" and together with GSLH, the "Debtors"), Amalgamated Bank (the "Bank"), Delmar SNF Operations Associates, LLC ("Delmar SNF"), Delmar AH Operations Associates, LLC ("Delmar AH" and together with Delmar SNF, the "Operations Purchasers"), Delmar SNF Realty Associates, LLC ("Delmar SNF Realty"), Delmar AH Realty Associates, LLC ("Delmar AH Realty" and together with Delmar SNF Realty, the "Realty Purchasers" and together with the Operations Purchasers collectively, the "Purchasers", and together with the Debtors, Bank, and the Purchasers, the "Parties");

**WHEREAS**, on December 12, 2019, GSLH and GSLHC each filed petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of New York (the "Court") to commence their bankruptcy cases, with such cases subsequently being jointly administered under Case No. 19-12215-1; the filings constituted orders for relief; the Debtors continued in possession of their assets and in management of their business as debtors and debtors-in-possession pursuant to Bankruptcy Code Section 1107 and 1108;

**WHEREAS**, the Debtors entered into (A) (i) the Asset Purchase Agreement dated as of December 10, 2019, by and between GSLHC and Delmar SNF, as amended by that certain Amendment to Asset Purchase Agreement dated February 27, 2020 (the "SNF APA"), and (ii) the Asset Purchase Agreement dated as of December 10, 2019, by and between GSLH and Delmar AH, as amended by that certain Amendment to Asset Purchase Agreement dated February 27,

1

2020 (the "AH APA," together with the SNF APA collectively, the "Asset Purchase Agreement");
(B) (i) the Purchase and Sale Agreement dated as of December 10, 2019, by and between GSLHC
and Delmar SNF Realty (the "SNF Realty Agreement"), and (ii) the Purchase and Sale Agreement
dated as of December 10, 2019, by and between GSLH and Delmar AH Realty (the "AH Realty
Agreement", together with the SNF Realty Agreement collectively, the "Real Estate Agreements");
(C) (i) the Receiver Agreement – Nursing Home dated as of May 28, 2020, by and between
GSLHC and Delmar SNF (the "SNF Receiver Agreement"), and (ii) the Receiver Agreement –
Adult Home dated as of May 28, 2020, by and between GSLH and Delmar AH (the "AH Receiver
Agreement", together with the SNF Receiver Agreement collectively, the "Receivership
Agreements" and together with the Asset Purchase Agreements and Real Estate Agreements, the
"Sale Agreements"); and (D) that certain Debtor-in-Possession Credit Agreement dated as of
January 9, 2020 with the Bank, as subsequently amended (the "DIP Agreement");

**WHEREAS**, on December 2, 2020, the Debtors' Second Amended Joint Chapter 11 Plan
of Liquidation (the "Plan") was confirmed by the Bankruptcy Court, the Debtors became
Reorganized Debtors under the Bankruptcy Code, and Steven J. Mitnick, Esq. was appointed Plan
Administrator pursuant to the terms of the Plan;

**WHEREAS**, the Debtors, Bank and Purchasers entered into the Extension Agreement
dated as of March 21, 2023 (the "First Extension Agreement"), which provided for certain
amendments to the Sale Agreements and DIP Agreement for the consideration described in the
First Extension Agreement;

**WHEREAS**, the Debtors, Bank and Purchasers entered into the Extension Agreement
dated as of September 25, 2023 (the "Second Extension Agreement"), which provided for certain

2

amendments to the Sale Agreements and DIP Agreement for the consideration described in the Second Extension Agreement;

**WHEREAS**, the Debtors, Bank and Purchasers entered into the Extension Agreement dated as of December 20, 2023 (the "Third Extension Agreement"), which provided for certain amendments to the Sale Agreements and DIP Agreement for the consideration described in the Third Extension Agreement;

**WHEREAS**, the NYDOH has not yet approved the transfer of ownership of both of the Debtors' facilities to the Purchasers and therefore the Parties have agreed to certain amendments to the Sale Agreements and DIP Agreement as further described herein;

**NOW, THEREFORE**, in exchange for the mutual promises set forth in this Fourth Agreement, **IT IS HEREBY AGREED** as follows:

1.      The Purchasers shall pay an extension fee of $38,722.22 (the "Extension Fee") by no later than June 26, 2024 consisting of: (i) $23,722.22 to the Bank; and (ii) $15,000.00 to the Plan Administrator.

2.      In exchange for the Extension Fee, the Bank and the Plan Administrator for the Debtors shall agree to a Seventh Stipulation and Consent Order ("Seventh Consent Order") approving amendments to the Asset Purchase Agreements, Realty Agreements and the DIP Agreement, which shall provide for a three (3) month extension of the June 30, 2024 date referenced in those documents, through September 30, 2024 (the "Extension Period").

3.      The Extension Fee shall not be deemed property of the Debtors' estate, but rather, shall be used to cover the Debtors' obligation to pay the Bank DIP loan interest, as well as the Plan Administrator's fees/expenses through the Extension Period.  Specifically, of the Extension Fee, $23,722.22 shall be paid to the Bank to cover the future DIP loan interest for the months of June

3

through September 30, 2024. The $15,000.00 balance of the Extension Fee shall be paid to the

Plan Administrator to reserve for his anticipated fees/expenses through the Extension Period,

which fees and expenses are estimated to be $5,000.00 per month for the next three (3) months

(i.e., $15,000.00).

      4.     All obligations of the Debtors under the DIP Agreement, and the Purchasers and

Receivers under the Sale Agreements, are unaltered by this Fourth Agreement. Moreover, for

avoidance of doubt, the Extension Fee will not be credited towards any purchase price or other

obligations of the Purchasers or Receivers under the Sale Agreements, but is rather intended

toward reducing the burden on the Debtors' estate arising from the Extension Period.

      5.     This Fourth Agreement may be executed by the Parties individually or in any

combination, in one or more counterparts, each of which shall be deemed an original and all of

which shall together in the aggregate constitute one and the same agreement. This Fourth

Agreement may be executed and delivered by telecopier or other facsimile transmission or in

".pdf" format, all having the same force and effect as if the same was a fully executed and delivered

original counterpart.

<p style="text-align:center">[remainder of page left intentionally blank]</p>

<div style="text-align:center">4</div>

7718572

**IN WITNESS WHEREOF**, the Parties hereby execute this Fourth Agreement as of the date referenced above, with the intent to be legally bound.

**"DEBTORS"**:
**KENWOOD MANOR INC., f/k/a Good
Samaritan Lutheran Home, Inc.**

By: _____
Name: Steven J. Mitnick, Esq.
Title:   Plan Administrator under Debtors'
Second Amended Joint Chapter 11 Plan of
Liquidation

**GOOD SAMARITAN LUTHERAN
HEALTH CARE CENTER, INC.**

By: _____
Name: Steven J. Mitnick, Esq.
Title:   Plan Administrator under Debtors'
Second Amended Joint Chapter 11 Plan of
Liquidation

**"OPERATIONS PURCHASERS"**:
**DELMAR AH OPERATIONS
ASSOCIATES, LLC**

By: _____
Name: Kenneth Rozenberg
Title:   Managing Member

**DELMAR SNF OPERATIONS
ASSOCIATES LLC**

By: _____
Name: Kenneth Rozenberg
Title:   Managing Member

**"REALTY PURCHASERS"**:
**DELMAR AH REALTY
ASSOCIATES, LLC**

By: _____
Name: Daryl Hagler
Title:   Managing Member

**DELMAR SNF REALTY
ASSOCIATES, LLC**

By: _____
Name: Daryl Hagler
Title:   Managing Member

**DELMAR SNF OPERATIONS
ASSOCIATES, LLC, as Receiver**

By: _____
Name: Kenneth Rozenberg
Title:   Managing Member

**DELMAR AH OPERATIONS
ASSOCIATES, LLC, as Receiver**

By: _____
Name: Kenneth Rozenberg
Title:   Managing Member

**AMALGAMATED BANK**

By: _____
Name:
Title:

5

7718572

**IN WITNESS WHEREOF**, the Parties hereby execute this Fourth Agreement as of the date referenced above, with the intent to be legally bound.

**"DEBTORS":**
**KENWOOD MANOR INC., f/k/a Good Samaritan Lutheran Home, Inc.**

By: _____
Name: Steven J. Mitnick, Esq.
Title:   Plan Administrator under Debtors' Second Amended Joint Chapter 11 Plan of Liquidation

**GOOD SAMARITAN LUTHERAN HEALTH CARE CENTER, INC.**

By: _____
Name: Steven J. Mitnick, Esq.
Title:   Plan Administrator under Debtors' Second Amended Joint Chapter 11 Plan of Liquidation

**"OPERATIONS PURCHASERS":**
**DELMAR AH OPERATIONS ASSOCIATES, LLC**

By: _____
Name: Kenneth Rozenberg
Title:   Managing Member

**DELMAR SNF OPERATIONS ASSOCIATES, LLC**

By: _____
Name: Kenneth Rozenberg
Title:   Managing Member

**"REALTY PURCHASERS":**
**DELMAR AH REALTY ASSOCIATES, LLC**

By: _____
Name: Daryl Hagler
Title:   Managing Member

**DELMAR SNF REALTY ASSOCIATES, LLC**

By: _____
Name: Daryl Hagler
Title:   Managing Member

**DELMAR SNF OPERATIONS ASSOCIATES, LLC, as Receiver**

By: _____
Name: Kenneth Rozenberg
Title:   Authorized Signatory

**DELMAR AH OPERATIONS ASSOCIATES, LLC, as Receiver**

By: _____
Name: Kenneth Rozenberg
Title:   Authorized Signatory

**AMALGAMATED BANK**

By: _Melony Heh_____
Name: Melony Heh
Title: First Vice President

5

7718572